IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MONICA HAGUE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | SA-11-CA-1101-OG |
| UNIVERSITY OF TEXAS HEALTH | § | |
| SCIENCE CENTER AT SAN ANTONIO, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Now comes Plaintiff Monica Hague and files this Plaintiff's Objections to the Report and Recommendation of United States Magistrate Judge and would show as follows:

**1. Plaintiff provided sufficient evidence to prove Defendant's proffered explanation is false or unworthy of credence.**

Plaintiff objects to the Magistrate Judge's incorrect finding at page 16 of the report and recommendation that Plaintiff provides no other summary judgment evidence besides her own assertions that Defendant's reasons for her non-renewal were pretextual, referencing to pages 7-10 of Plaintiff's response. As stated by the Magistrate Judge, Plaintiff may show pretext "by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson v. Cal-Western Packaging Corp.,* 602 F.3d 374, 379 (5th Cir. 2010).

The evidence presented with the motion for summary judgment, response, and reply clearly shows Defendant offered various reasons for non-renewing Plaintiff, some which were false and others unworthy of credence. Plaintiff did not merely rely on her own assertions in proving the

claims are false or unworthy of credence, but also relied on the inconsistencies in the testimony of Dr. Lance Villers, Plaintiff's second level supervisor (Defendant's Exhibit 5), and the controverting testimony of her first level supervisor Joseph Lindstrom (Defendant's Exhibit 27).

Villers made the decision not to renew Plaintiff's contract with Defendant, claiming it was performance based. When asked in his deposition about Plaintiff's performance issues, Villers testified there were no performance issues during Plaintiff's 2008-2009 appointment. The only performance issues Villers claims existed in 2009-2010 were issues of how to fill out a time sheet and time management. Finally, in 2010-2011 Villers again claims the same issues of time reporting, time management, with the addition of an issue of trust related to reporting of time on a time sheet. (Defendant's Appx at 200-203).

The 15 alleged performance issues listed by the Magistrate Judge in the report and recommendation came from the interrogatory answers of Defendant, which were discussed with both Villers and Lindstrom during their depositions. Both these depositions are submitted in their entirety by Defendant with the motion for summary judgment. From the testimony of Villers and Lindstrom, it is clear the alleged performance issues are not problems with Plaintiff's work performance, but excuses which are now being used to justify the non-renewal.

In her response, Plaintiff addressed the alleged performance issues in the manner they were argued by Defendant in the motion for summary judgment. As shown later in these objections, Plaintiff presented sufficient evidence in the response to prove the "performance issues" claimed by Defendant in the motion for summary judgment are mere pretext for retaliation.

While the evidence is the same as provided in her response, Plaintiff now addresses the alleged performance issues in the manner presented by the Magistrate Judge:

(1) "displayed poor time management skills on major department assignments," including an inability to adequately perform duties with respect to her committee assignments;

Since Villers did not office in the same location as Plaintiff and did not have much contact with Plaintiff (Defendant's Appx at 194-196, 405), he claims to have relied on Plaintiff's supervisor Lindstrom (Defendant's Appx at 184, 199) and the Medical Director who provided medical oversight (Defendant's Appx at 309) for this allegation. (Defendant's Appx at 220, 232). Both Lindstrom and Villers testify this item relates to the special duty assigned to Plaintiff of working on the stroke committee. (Defendant's Appx at 219, 221). This was a new project, given only to Plaintiff, which she performed in addition to her other duties. It was the first time this type data was being gathered and there were issues to be worked out with the method of gathering the data. Eventually, Plaintiff was given assistance and then the assignment was given to another employee, who also had problems. Finally, the issues were resolved. (Defendant's Appx at 575-579). It is untrue that Plaintiff displayed poor time management skills on her assignments. In truth, Plaintiff took on a major project in addition to all her other duties which required more time than expected and she was willing to work the hours necessary to make the project successful.

(2) "demonstrated unprofessional conduct by [failing] to follow procedures regarding time sheet submission," including submission of "unverifiable time and evaluation reports";

Lindstrom testifies there are no procedures regarding time sheet submission. (Defendant's Appx at 581). Therefore, this allegation is untrue.

(3) violated the operating procedures when she spoke, without prior UTHSC permission, to a public official about an important contract between UTHSC and the City of San Antonio, thus "hampering the Health Science Center's position in contract negotiations";

Villers's own testimony proves this allegation is untrue, when he confirms Plaintiff's actions did not hamper the negotiations. (Defendant's Appx at 234-235). In addition, Villers did not specify any operating procedures which were violated by Plaintiff, because none exist.

(4) was "unnecessarily argumentative regarding her faculty salary" and demanded a $20,000 to $30,000 raise;

Villers is asked in his deposition to describe how Plaintiff was unnecessarily argumentative. (Defendant's Appx at 237). Nothing in that description supports his allegation that Plaintiff was unnecessarily argumentative.

(5) "failed to follow established procedures regarding security and protection of protected health information" by taking home confidential information contained in files;

This is untrue. The testimony of Plaintiff's supervisor Lindstrom proves Plaintiff did not violate any established procedures, because the employees were allowed to take home confidential information. Lindstrom confirms he also took home the information, as did the faculty member who is the subject of item 11 (working on the project on the weekend). (Defendant's Appx at 584-586).

(6) "inaccurately portray[ed] her faculty title as a clinical instructor for [the San Antonio Fire and Emergency Department] in email communications with supervisors";

This is untrue. Plaintiff's supervisor Lindstrom testifies the Firefighter's Union had a problem with how the employees were using the designation and a statement was made to the entire staff to stop. (Defendant's Appx at 586-587).

(7) wasted Department time when she requested and was awarded a stipend "for a trip which she failed to attend or notify supervisors about her failure to attend";

This is unworthy of credence. Plaintiff had car problems and could not attend the conference,

4

which she discussed with her supervisor Lindstrom. He did not consider this a disciplinary problem. (Defendant's Appx at 587-588).

(8) "failed a departmental written examination";

This is unworthy of credence. A new examination was created and several employees, including Plaintiff failed the examination the first time. Plaintiff retook the examination within a short time, passed the examination, and returned to her full duties. (Defendant's Appx at 217-219, 588-590).

(9) made inaccurate statements that "covered work shifts for other department faculty without compensation";

This is unworthy of credence, because the decision had already been made to non-renew Plaintiff when this allegation arose. This was never even discussed with Plaintiff. (Defendant's Appx at 241).

(10) "unprofessionally misrepresented comments from Dr. Blankmeyer saying she was not required to work or respond to phone calls or emails on the weekends because weekends were her personal time";

This allegation may be untrue, because Lindstrom remembers Plaintiff saying this but does not remember Plaintiff claiming Dr. Blankmeyer told her. (Defendant's Appx at 591).

(11) accused a Department faculty member of "constant badgering and harassment when [the faculty member] was attempting to inquire about data [Hague] provided for a committee presentation";

This issue as stated by Villers is misleading. The faculty member was demanding Plaintiff provide information to her on the weekend, so the faculty member could prepare a presentation for

5

Monday. Plaintiff was not working on that weekend nor was she on call. She did not respond to the numerous messages from the faculty member, which her supervisor Lindstrom testifies he did not consider to be insubordination. (Defendant's Appx at 242-244, 591-592).

(12) accused Dr. Villers of sabotaging her professional reputation when he did not support Hague's service on a Department committee;

This is unworthy of credence, because it relates back to the untrue allegation that Plaintiff had time management problems. (Defendant's Appx at 246-247).

(13) represented to Dr. Villers that she was writing a research paper on stroke patients based on data obtained from the Fire Department, but without prior approval for the project;

This is unworthy of credence, because Plaintiff was required to do research papers as part of her duties and she had discussed this with her supervisor. (Defendant's Appx at 247-249, 594).

(14) "falsely and publicly accused the department management of deleting her from interoffice emails and department projects"; and

This is unworthy of credence, because Villers claims this accusation was public, since it was made to the Equal Employment Opportunity Commission. (Defendant's Appx at 249).

(15) falsely accused Dr. Villers of violating a contract with the City.

This is untrue, because Dr. Villers did violate the contract with the City. Dr. Villers negotiated with the City to receive money in the contract specifically for raises, but then failed to give the raises (other than a bonus to Dr. Manifold) and did not return the money to the City. (Defendant's Appx at 270, 304).

While the Magistrate Judge cites to the 15 items from the deposition in the report and recommendation, in the motion for summary judgment Defendant addresses the alleged performance

issues in a different manner. In her response, Plaintiff provides the following evidence that all the reasons cited by Defendant in the motion are false or unworthy of credence:

In Defendant's Exhibit 1 - Statement of Facts (Defendant's Appx at 3), Defendant claims beginning October 2009 Plaintiff began having minor issues for which Villers attempted to counsel her. The first issue described involved a San Antonio Firefighter who was receiving remedial training from Plaintiff for his work deficiencies. Plaintiff's duties as a Civilian Training Officer (CTO) included administrative, educational, and quality assurance responsibilities. (Plaintiff's Exhibit B). Plaintiff and the other CTOs evaluated the performance of paramedics and students through on-scene patient care activities, clinical evaluations, and chart audits. Recommendations were then made regarding the need for re-mediation for individual paramedics or paramedic students based on these evaluations. These duties required Plaintiff to be out of the office and in the field with the paramedics and students, away from the office telephone. Since CTOs were not provided work cell phones, she used her personal cell phone to communicate with the paramedics and students for whom she was responsible. This incident occurred when the firefighter receiving remedial training called Plaintiff late at night on her cell phone when he was drinking and asked to come to her house. (Defendant's Appx at 346). Defendant now states this was Plaintiff's performance problem, claiming in the motion "the Fire Department's investigation concluded that Hague had given the firefighter her personal cell number." (Defendant's Appx at 6). This is not supported by the October 10, 2009, incident report ( Defendant's Appx at 346), which states it was the Union's position this firefighter called Plaintiff's personal cell phone because Plaintiff had given him her number and they had been communicating on her personal cell phone. The Union attempted to defend the firefighter by blaming Plaintiff. However, giving her personal cell phone number to a

firefighter for work related purposes did not justify him using it to call her late at night and make inappropriate suggestions. *Steward v. Sears Robuck & Co.*, 231 Fed. Appx. 201 (3rd Cir. 2007) (reversing JMOL in favor of Sears, in part because the problems that the employee was blamed for weren't actually his fault).

This was the first time Plaintiff reported inappropriate behavior by a male and she was met with similar hostility as incurred when she reported the inappropriate behavior of Villers and Manifold to Wallace and Blankmeyer.

Defendant's next "performance issue" involved Plaintiff "spending inordinate amounts of time "studying" with students at the fire academy when she had not been assigned to work there." (Defendant's Appx at 6). As part of her job requirements, Plaintiff was attending a paramedic class to prepare for taking the national registry exam to become a licensed paramedic and was studying with her classmates for the exam. Villers did not want Plaintiff to study with her classmates, because he did not want someone perceived to be a faculty member come in and undermine the existing faculty member's credibility. (Defendant's Appx at 351-352). Once again, this is not a performance issue with Plaintiff.

Defendant claims Plaintiff's performance continued to "slide" and in July 2010, Villers "counseled" Plaintiff about "spending too much time working." (Defendant's Appx at 7). Plaintiff was allegedly "counseled" for taking patient files home, but she was also "counseled" for being unresponsive to Dr. Emily Kidd when Dr. Kidd attempted to contact Plaintiff on a *weekend* to obtain data in Plaintiff's possession. Plaintiff's work responsibilities did require her to work many hours. Teaching classes, doing field evaluations, performing administrative responsibilities, and serving on committees required more than 40 hours in a week. (Plaintiff's Exhibit C). Plaintiff was the first

8

CTO appointed to the Stroke Committee to gather data in a cooperative program with Defendant, the Fire Department, STRACT, and several hospital groups. This was a new project and difficulties arose in gathering the required data and making the reports. Better procedures for gathering the data were eventually developed as the program progressed. (Defendant's Appx at 220-221, 576-579). Plaintiff took files home to work on this project, with the knowledge and approval of her supervisor Joe Lindstrom. Lindstrom also took patient information home. (Defendant's Appx at 584-586). Contrary to its assertion Plaintiff should not have the files at home, Dr. Kidd contacted Plaintiff on the weekend for data from those files.

Plaintiff is accused of incorrectly submitting time sheets, because she put all the hours she worked on the time sheets instead of just the hours she took off. Her supervisor Joe Lindstrom testifies she did not violate any policy by submitting the time sheets in this manner. (Defendant's Appx at 581-582).

Plaintiff is criticized for "demanding" a raise. The new contract negotiated between Defendant and the City of San Antonio Fire Department provided a line item in the budget dedicated for raises. However, the employees were not given those raises. As Villers testifies, everyone wants a raise. (Defendant's Appx at 235-237, 582-584)

Plaintiff is also criticized for misrepresenting her title making it appear she was associated with the Fire Department. This was not an issue directed solely at Plaintiff, but was the result of a Union demand to everyone. (Defendant's Appx at 586-587)

The Supreme Court in *Celotex Corporation v. Myrtle Nell Catrett*, 477 U.S. 317, 91 L.Ed.2d 265, 106 S. Ct. 2548 (1986) clearly set out standards for Rule 56 motions. Under the *Celotex* standard, the respondent or non-moving party is not required to prove its case in a Motion for

9

Summary Judgment. The non-moving party must only show that there are genuine material facts in controversy.

For purposes of summary judgment, all the facts and inferences are viewed from the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). Fact questions are considered with deference to the non-movant. *Reid v. State Farm Mutual Automobile Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

If the evidence shows that a reasonable jury could return a verdict for the non-moving party, then the dispute is genuine. *Hibernia National Bank v. Carner,* 997 F.2d 94, 98 (5th Cir. 1993).

Plaintiff has provided sufficient evidence to prove Defendant's proffered explanation is false or unworthy of credence, establishing pretext. Therefore, the motion for summary judgment should be denied.

**2.   Defendant has not offered legitimate, non-retaliatory reasons for its decision not to renew Plaintiff's employment.**

Plaintiff objects to the Magistrate Judge's incorrect finding at page 13 of the report and recommendation that Defendant has offered, and Plaintiff has not rebutted, legitimate, non-retaliatory reasons for its decision not to renew Plaintiff's employment for another term.

Defendant cannot simply make up a list of complaints in order to create a legitimate, non-retaliatory reason for its decision. As argued by Plaintiff in her response, while subjective criteria like these "may serve legitimate functions, they also provide opportunities for unlawful discrimination," because the criteria itself may be pretext for discrimination. *Crawford v. Western Elec. Co*., 614 F.2d 1300, 1315 (5th Cir. 1980). An employer may not "utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when

10

its promotion process is challenged as discriminatory." *Id. See also Rowe v. Cleveland Pneumatic Co.*, 690 F.2d 88, 93(6th Cir. 1982) (per curiam) (finding that subjective processes provide a ready mechanism for discrimination, permitting … prejudice to affect and often control promotion and hiring decisions.).

Although an employer is free to make employment decisions based on subjective criteria, one can only distinguish legitimate employment decisions from those in which subjective criteria served as pretext for discrimination by weighing the employer's credibility. *Lindsey v. Prive Corp.*, 987 F.2d 324, 327-8 (5th Cir. 1993) (reversing summary judgment in favor of employer) (emphasis added). Courts are not permitted to make this credibility evaluation at the summary judgment stage. Giving that determination to the jury "will not require second guessing of the [employer's] personnel decisions but, rather, will require an evaluation of the credibility of the defendant's testimony about the reasons for that decision." *Id*. at 328. Because Defendant's stated reasons for terminating Plaintiff are entirely subjective, summary judgment is improper.

The fact that an employer's stated reasons for termination are objectively unreasonable or non-sensical is evidence of pretext. *Laxton v. Gap Inc.*, 333 F.3d 572, 581 (5th Cir. 2003) (finding sufficient evidence of pretext in a Title VII case, including the fact that part of the employer's justification did not make sense); *Acker*, at 842 (employee may show pretext by presenting evidence that the employer's asserted reason was insufficient to motivate the discharge.); *James v. Sheahan*, 137 F.3d 1003, 1007 (7th Cir. 1998) (pretext reflected in fact that stated reason was not sufficient to warrant adverse action). A jury should hear these witnesses' differing testimonies, evaluate their respective biases, consider on-the-stand intangibles such as body language, facial expressions, and displays of nervousness, and decide which witness to believe. *United States v. Allen*, 587 F.3d 246,

11

257 (5th Cir.2009) ("Witness credibility and the weight of the evidence are the exclusive province of the factfinder.").

Villers did not even discuss some of the alleged performance issues with Plaintiff and he agrees he did not discipline Plaintiff for any performance issues, alleging he merely counseled her. *Ridley v. Costco Wholesale Corp.*, 2007 U.S. App. LEXIS 2493 (3rd Cir. 2007) (Even though employee admitted to engaging in the conduct that resulted in the issuance of the counseling notices, the jury could have found that the punishment was greater than his conduct deserved – and that Costco instead used those incidents as an excuse to retaliate against him).

As pointed out in the first paragraph, the Magistrate Judge claims the Plaintiff relies only on her own assertions to support her claims. While this is not true of Plaintiff, it is true of Defendant. In a motion for summary judgment, Defendant has the burden of proof. Villers cannot rely on his own subjective assertions to create a legitimate reason for his actions. There is a material issue of fact as to whether Defendant has presented a legitimate reason for its actions. Therefore, the motion for summary judgment should be denied.

**3.     Plaintiff has established her sexual harassment claim.**

Plaintiff objects to the standard of proof the Magistrate Judge applied to the sexual harassment claim.

The United States Supreme Court has addressed the issue of harassment in *Burlington Industries Inc. v. Ellerth,* 118 S.Ct. 2257 (1998) and *Faragher v. City of Boca Raton,* 118 S.Ct. 2275 (1998). While *Ellerth* and *Faragher* specifically address the issue of sexual harassment, the holdings are applicable to all forms of harassment based on protected classes. In *Ellerth*, the Court held an employer is subject to vicarious liability to an employee victimized by a supervisor with immediate

or successively higher authority over the employee, but if no adverse action occurred, the employer has an affirmative defense. According to these decisions, the relevant inquiry becomes whether an employee has been subjected to or even threatened with a tangible job detriment. If it is found that an employee has suffered no tangible job detriment as a result of having refused to submit to harassing conduct, the question of whether an employer will be held liable will depend on whether an employer exercised reasonable care to prevent and promptly correct harassment in the work place, as well as whether an employee took advantage of the employer's preventive or corrective opportunities to remedy any alleged harassment.

In *Casiano v. AT&T Corporation,* 213 F.3d 278 (5th Cir. 2000), the Fifth Circuit provided a clear roadmap for determining liability in harassment cases under *Ellerth* and *Faragher*. The first question to be asked is whether there has been a tangible employment action. In this case the answer is yes, because Plaintiff was terminated from employment when she was not offered a contract for 2011-2012. As a result of the tangible employment action, Defendant is subject to vicarious liability for its actions and no affirmative defense is available to defeat the liability.

Plaintiff is not required to prove the conduct is sufficiently severe or pervasive to alter the terms or conditions of the employee's employment and create a hostile or abusive work environment nor is she required to defeat the affirmative defense of prompt remedial action, because there has been a tangible employment action. Therefore, the motion for summary judgment should be denied.

**4.     Plaintiff has not relied solely on timing to prove a causal link.**

Plaintiff objects to the Magistrate Judge's incorrect finding at page 13 of the report and recommendation that the temporal connection (eight months) is not particularly close.

Plaintiff has already demonstrated the legitimate non-discriminatory reasons for the

termination offered by Defendant are baseless, which alone is evidence of a causal link. In addition, the timing of the action also is proof of the causal link.

The cases cited by Defendant to support a contention that timing must be very short, less than a few months, involve plaintiffs who relied solely on temporal proximity. Plaintiff is not relying solely on timing to show pretext.

There is no formula for the requisite amount of time between an employee's complaint and retaliatory action. *Gee*, 289 F.3d 342 n. 3 (5th Cir. 2002)(reversing summary judgment and citing the fact that plaintiff's non-selection followed her harassment complaint by two years did not entitle defendant to summary judgment). The passage of time cannot disprove retaliation as a matter of law. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992) (fourteen months between charge and retaliation did not disprove retaliation).

There exists a genuine issue of material fact as to whether Plaintiff has shown a causal connection between her protected activity and her termination. Therefore, the motion for summary judgment should be denied.

Wherefore, premises considered, Plaintiff files these objections to the report and recommendation of the United States Magistrate Judge and requests the Court deny Defendant's motion for summary judgment in that Plaintiff has raised genuine issues of material fact precluding the granting of summary judgment and for such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

LAW OFFICES OF
GAUL AND DUMONT
924 Camaron Street
San Antonio, Texas 78212
(210) 225-0685
(210) 320-3445 - Fax

By: *s/ Malinda A. Gaul*
MALINDA A. GAUL
State Bar #08239800
Attorney for Monica Hague

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of December, 2012, I electronically filed the above and foregoing *Plaintiff's Objections to the Report and Recommendation of United States Magistrate Judge* with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

Daniel Perkins
Assistant Attorney General
Texas Attorney General's Office
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

**/s/ Malinda A. Gaul**
Malinda A. Gaul

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| MONICA HAGUE, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. |
| § | SA-11-CA-1101-OG |
| UNIVERSITY OF TEXAS HEALTH § | |
| SCIENCE CENTER AT SAN ANTONIO, § | |
| § | |
| Defendant. § | |

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

Came on to be heard Defendant's Motion for Summary Judgment and Plaintiff's response.

Upon review of the motion and response, the Court finds it does not have merit and should be DENIED.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is DENIED.

Signed this _____ day of _____, 2012.

_____
ORLANDO GARCIA
UNITED STATES DISTRICT JUDGE